**EXHIBIT 3**

Case 4:07-cv-05748-CW   Document 14-5   Filed 06/23/2008   Page 1 of 9

LAW OFFICE OF
# Adrian T. Woodward
400 Long Beach Boulevard, Suite 3001
Long Beach, CA 90807
Telephone: (562) 424-4880
Facsimile: (562) 494-4830

July 9, 2005

THE HONORABLE
Marla O. Anderson, Judge
Monterey County Superior Court
P.O. Box 1051
Salinas, CA 93902-0414

Re:  *In re Brandee Tripp* (Habeas Corpus)
     Case No. **HC 05015**

Dear Judge Anderson:

Petitioner's counsel respectfully submits this informal brief in reply to respondent's letter brief (RLB) filed on or about July 1, 2005. Petitioner will review each of her constitutional claims with respect to the defenses to which, if any, appear in respondent's brief.

## I.

Petitioner will first address a basic misconception in respondent's argument. It has long been conceded that petitioner was not directly involved in, and did not plan or anticipate the homicide that eventually occurred. (RLB, pp. 1-2; petition, pp. 2-3.) Respondent does not disagree, conceding that petitioner "facilitated" the victim's kidnapping. (RLB, p. 1.) Although petitioner played no direct role in the murder, respondent like the Governor, seeks to justify precluding petitioner's parole apparently forever, despite her having met all suitability requirements therefor, based solely on the acts committed by those who murdered the victim. (RLB, pp. 3-5.)

The California Supreme Court, in *In re Rosenkrantz* (2002) 29 Cal.4th 616, a case relied on by respondent, explicitly held that denial of parole based as here solely on the facts of the commitment offense, would violate due process if the defendant's conduct was not "more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (29 Cal.4th at p. 683.) Despite petitioner's vicarious culpability for the murder, it has been long undisputed that her criminal conduct was indeed the minimum necessary to sustain her conviction for murder. Nor does the Governor dispute that petitioner had no prior criminal record and that her post-conviction record and parole plans are exemplary.

## II.

Petitioner claimed a due process violation by reversal of her parole grant under Pen.C. § 3041.2 without the Governor's review of her case or of any of the documents relied on by the granting panel; she did not receive individualized or *any* consideration by the Governor as required by law. Please see petition brief, pp. 23-25. The Attorney General and Governor's office have admitted that the requisite gubernatorial review is conducted by BPT *staff* and the Governor's *staff*; they have never denied that the Governor never sees or reviews these cases. Respondent does not refute the claim. See *In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 2; *In re Sixto* (1989) 48 Cal.3d 1247, 1252; *In re Lewallen* (1979) 23 Cal.3d 274, 278 (court accepts as true facts and claims not disputed in the return).

## III.

For the *fourteenth* time, a governor or parole board panel has deemed petitioner unsuitable for parole based on her role in the commitment offense. For the *second* time, a governor has *reversed* the parole board's finding of her suitability for parole based solely on her role in the commitment offense. The *maximum* prison term prescribed by the regulations for the facts of her particular offense lapsed *13 years ago*; the parole dates set by two BPT panels that found petitioner suitable for parole lapsed *15 years ago*. There remains no doubt that because neither her suitability for parole and documented low parole risk, nor the facts of her offense can *ever* improve, she will be <u>interminably</u> denied parole until her ultimate death in prison, based solely on her offense, her legislatively prescribed, judicially imposed term, 15 years to life with the possibility of parole, defined as a *probability* of parole by Pen.C. § 3041(a) [panel "shall normally set a parole release

date"], having been untenably converted to life without any possibility of parole. See petition, pp. 3, 21-22.

Respondent does not address or mention this claim. Respondent's position is simply that parole may be precluded, apparently forever, due to a serious commitment offense. No case authority supports the proposition. Cases cited by petitioner, e.g., *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 916, prohibit it. In addition to the authorities set forth in the petition, petitioner respectfully calls the Court's attention to a recent federal court's reasoning applicable to petitioner's claim in *Irons v. Warden* (E.D. Ca. 2005) 358 F.Supp.2d 936:

> In finding petitioner unsuitable at this fifth parole suitability hearing, the panel relied exclusively on unchanging factors: the commitment offense and petitioner's drug use at the time of the offense. In *Biggs*, the Ninth Circuit stated that the BPT was "*initially justified*" in finding Mr. Biggs unsuitable based on the circumstances of the offense and his conduct prior to imprisonment. 334 F.3d at 916 (emphasis added). However, the Ninth Circuit was not specific as to when reliance on the circumstances of the offense and conduct prior to imprisonment would "run contrary to the rehabilitative goals espoused by the prison system" and result in a due process violation. 334 F.3d at 917.
>
> More important to the undersigned in assessing any due process violation is the fact that continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole.
>
> The court asks rhetorically – what is it about the circumstances of petitioner's crime or motivation which are going to change? The answer is nothing. The circumstances of the crimes will always be what they were, and petitioner's motive for committing them will always be trivial. Petitioner has no hope for ever obtaining parole except perhaps that a panel in the

In re BRANDEE TRIPP; Petitioner's Informal Reply Brief – Page 3

future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial.

Given that *no one* seriously contends lack of seriousness or lack of triviality at the present time, the potential for parole in this case is remote to the point of non-existence. Petitioner's liberty interest should not be determined by such an arbitrary, remote possibility. [FN2]

FN2. To a point, it is true, the circumstances of the crime and motivation for it may indicate a petitioner's instability, cruelty, impulsiveness, violent tendencies and the like. However, after fifteen or so years in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not possess those attributes, the predictive ability of the circumstances of the crime is near zero . . . Under these circumstances, the continued reliance on these factors at the 2001 hearing violated due process. *Irons*, 358 F.Supp.2d at p. 947.

## IV.

Petitioner argued that the Governor's finding, that she would pose "an unreasonable threat to public safety if released from prison at this time," was inapposite to the record including her forensic evaluations, which consistently assess her parole risk as the lowest possible. Petitioner also detailed that the Governor's findings in support of that conclusion were incorrect, e.g., that petitioner, her husband, and Cook "decided to kidnap *and kill*" the victim and that petitioner "helped plan the kidnap *and murder*." The facts, which respondent does not contest, establish that petitioner did *not* decide to kill the victim or help plan a murder. Summarily, because the Governor's findings and conclusion were unsupported by any evidence whatsoever, reversal of petitioner's parole grant based thereon abrogated due process and her liberty interest in parole. Please see petition, pp. 10-16.

Respondent does not contest or address this claim.

## V.

Petitioner claimed that reversal of her parole based on a re-characterization of her offense as a first degree murder abrogated due process and breached the terms of her plea contract with the State. (Petition, pp. 12-16.) Respondent has ignored all of the authority set forth in the petition supporting the claim.

Respondent's defense rests solely on *In re Honesto* (2005) __ Cal.App.4th __; 29 Cal.Rptr.3d 653. (RLB, p. 6.) *Honesto* is inapplicable to petitioner's facts and claims:

> Honesto claims that the Board's denial of parole violated his plea agreement because an element of his plea agreement, and his sole motivation for pleading no contest, was that he would have the "right to parole" "in accord with the second-degree murder matrix" and that the matrix would "take precedence over the Board's standard procedure for determining parole suitability." Honesto asserts that, because the matrix was the basis for his plea agreement, the Board could not properly consider the facts of his offense as a basis for finding him unsuitable for parole. As he has "served his full sentence" under the agreement, Honesto asserts that "the only acceptable remedy" for the plea agreement violation is his "release from prison." (*Honesto* 29 Cal.Rptr.3d at p. 660.)

Because the issues in *Honesto*, summarized by the Court above, are not at stake here respondent's defense to this claim is meritless.

## VI.

Petitioner raised ex post facto and due process claims based on reversal of her parole grant by means of a new, more onerous law, enacted after the time of her plea contract with the State. Petitioner set forth substantial authorities holding that law existing at the time of her plea was incorporated into the contract. Please see petition, pp. 17-20.

Respondent's entire defense to this claim is based on *In re Rosenkrantz, supra*, 29 Cal.4th 616. As petitioner has explained, in *Rosenkrantz* the California Supreme Court held the new law not to be ex post facto when applied to a defendant <u>convicted by a trier of fact</u> of a murder committed prior to its enactment. *Rosenkrantz* is inapplicable and inapposite to petitioner's case. Unlike the petitioner in *Rosenkrantz*, who at trial defended against charges of first degree murder, second degree murder, and voluntary manslaughter and who thus had no inkling of what his eventual sentence might be and had no voice therein, petitioner waived her not guilty plea and her right to a trial and further agreed to assist the prosecution of her codefendants, thereby subjecting herself to years of peril in exchange for a specific sentence, the length of which would be determined solely by the Board of Prison Terms based on her commission of an unpremeditated, unplanned second degree murder.

Respondent, perhaps deliberately, clouds the issue by arguing that petitioner's sentence, "15 years to life," has not been changed by the new law. Petitioner's claims focus on her *prison term* not her sentence.

Respondent's final argument on this claim is decisive in petitioner's favor. Respondent foolishly claims that petitioner cannot demonstrate that her punishment was not increased as a result of the addition of a new level of gubernatorial review. (RLB, p. 7.) Petitioner's punishment, i.e., her prison term has been increased immensely due solely to the new law, but for which she would have been released from prison two years ago.

Respondent did not address the due process prong of this claim.

## CONCLUSION

By ignoring several of petitioner's constitutional claims, respondent has stipulated to their validity. Respondent's defenses to the remaining claims are without merit and contrary to controlling authority. Because petitioner has established at least a prima facie case for relief, an order to show cause should issue to permit the Court to reach a reasoned disposition following additional briefing on the merits. (Rule 4.551(c), Rules of Court.)

Dated  4/12/05

Respectfully submitted,

*[signature]*

Adrian T. Woodward
Counsel for Petitioner


# VERIFICATION

I declare, under penalty of perjury, that the facts set forth above are true.

Dated: 4/12/05 , at Long Beach, California.

# DECLARATION OF SERVICE BY MAIL

Case Name: **In re Brandee Tripp** on Habeas Corpus

I declare that on _July 12, 05_, I served the attached

**Petitioner's Informal Letter Reply Brief**

On the parties listed below by enclosing same in an envelope to which adequate first class postage was affixed, and depositing same in the box for United States Mail at Walnut, California.

**Attorney General
455 Golden Gate Avenue
San Francisco, CA 94102**

I declare, under penalty of perjury, that the facts I have stated above are true and correct.

Dated _July 12, 05_, 2005, at _Long Beach_
California

_____
Declarant