**EXHIBIT 9**




# CALIFORNIA COURT OF APPEAL
## SIXTH APPELLATE DISTRICT

In re:

**BRANDEE TRIPP**

Petitioner

For Writ of Habeas Corpus

Case No. H029507

---

## PETITIONER'S DENIAL

---

ADRIAN T. WOODWARD, Esq.
Law Offices of Adrian T. Woodward
State Bar # 184011
4260 Atlantic Avenue
Long Beach, CA 90807
Telephone: (562) 498-9666

Counsel for Petitioner
BRANDEE TRIPP

# *TABLE OF CONTENTS*

Denial                                                                          1


I.   **The Some Evidence Standard, which Should not Apply
     to this Case, is Misapplied by Respondent**                                2


II.  **Some Evidence of a Serious Commitment Offense
     Cannot Consistent with Due Process Justify the
     Interminable Preclusion of Petitioner's Parole Because
     her Accessory Role Constituted the Minimal Acts Requisite
     to her Conviction of Second Degree Murder, She has been
     Consistently Forensically Evaluated in View of her Offense
     Not to Pose an Undue Parole Risk to Public Safety, She has
     Served in Excess of the Prison Term Prescribed by the
     Regulations for the Facts of her Offense had it Resulted
     in a FIRST Degree Murder Conviction, and Because
     Preclusion of Parole on this Basis is Necessarily
     Interminable, Converting her Prison Term to Life
     With No Possibility of Parole**                                            6


Conclusion                                                                     29

# TABLE OF AUTHORITIES

## Cases

*Bair v. Folsom State Prison,* 2005 WL 2219220, (E.D.Cal. 2005) ..................................................... 20

*Biggs v. Terhune,* 334 F.3d 910 (9th Cir. 2003) ............................... 10-12, 14, 15, 17, 18, 20, 23, 25-28

*Carrillo v. Fabian,* 701 N.W. 2d 763 (2005) ................................................................................... 3

*Greenholtz v. Inmates of Nebraska Penal & Correctional,* 442 U.S. 1 (1979) .......................... 18, 23

*Hudson v. Kane,* 2005 WL 2035590 (N.D. Cal. 2005) ................................................................. 10, 14

*Johnson v. Finn,* 2006 WL 191559 (E.D. Cal. 2006) ............................................................ 16, 22, 24

*In re Dannenberg,* 34 Cal.4th 1061 (2005) ....................................................................................... 7

*In re Powell,* 45 Cal.3d 894 (1988) .............................................................................................. 2, 3

*In re Ramirez* (2001) 94 Cal.App.4th 549 ................................................................................. 10, 11

*In re Rosenkrantz,* 29 Cal.4th 616 (2002) .......................................................... 3, 7, 8, 9, 10, 11, 27

*In re Scott,* 119 Cal.App.4th 871 (2004) ........................................................................................ 21

*In re Scott,* 133 Cal.App.4th 573 (2005) .......................................................... 15, 16, 22, 25, 27

*In re Shaputis,* 135 Cal.App.4th 217 (2005) .................................................................................... 22

*In re Smith,* 114 Cal.App.4th 343 (2003) .................................................................................. 21, 26

*Irons v. Warden,* 358 F. Supp. 2d 936 (E.D.Cal. 2005) ................... 10, 13, 15, 16, 18, 21-24, 26, 29

*Martin v. Marshall,* 431 F.Supp.2d 1038 (N.D. Cal. 2006) ....................................................... 17, 19

*Masoner v. State,* 2004 WL 1080177 (C.D. Cal. 2004) ................................................................. 23

*McQuillion v. Duncan,* 306 F.3d 895 (9th Cir. 2002) ......................................................... 3, 16, 24, 28

*Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) .................................... 17

*Rosenkrantz v. Marshall,* _F.Supp.2d_(C.D. Cal. 2006), 2006 WL 2327085 ......................... 19, 25-28

*Sanchez v.Kane,* _F.Supp.2d_ (C.D. Cal. 2006), 2006 WL 2252640 ......................................... 14, 17

*Superintendent v. Hill,* 472 U.S. 445 (1985) ..................................................................... 2, 3, 16, 23, 24

*Sass v. Cal. Board Of Prison Terms,* _F.3d _2006 WL 2506393 (9th Cir. 2006) .................... 3, 27, 28

*Taylor v. Maddox,* 366 F.3d 992 (9th Cir. 2004) ............................................................................ 24

# TABLE OF AUTHORITIES
## (Continued)

**Statutes**

Pen.C. § 3041 .................................................................................................................... 4, 21, 28


**Regulations**

15 CCR § 2401 ........................................................................................................................... 4

15 CCR § 2402 ................................................................................................................ 4, 21, 26

15 CCR § 2403 .......................................................................................................................... 8, 9

15 CCR § 2410 ............................................................................................................................. 8

ADRIAN T. WOODWARD, Esq.
Law Offices of Adrian T. Woodward
State Bar # 184011
4266 Atnatic Avenue
Long Beach, CA 90807
Telephone: (562) 498-9666

Counsel for Petitioner
BRANDEE TRIPP

CALIFORNIA COURT OF APPEAL

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re | ) Case No. **H029507** |
| BRANDEE TRIPP, | ) **DENIAL** |
| Petitioner, | ) |
| For Writ of Habeas Corpus. | ) |

To THE HONORABLE CONRAD L. RUSHING, Presiding Justice,
and THE HONORABLE ASSOCIATE JUSTICES of the Court of Appeal,
Sixth Appellate District:

In response to the Court's order of August 7, 2006, petitioner Brandee
Tripp, through counsel, respectfully lodges a Denial in response to the
Return filed by respondent on September 6, 2006.

Petitioner ADMITS respondent's allegations in the Return stating the
offense of which she was convicted, the place of her confinement and the
name of her custodian, and the dates and results of parole determinations by
the Board of Parole Hearings (BPH) and the Governor. Petitioner DENIES
all other facts, claims, grounds, and argument set forth in the Return.

As respondent has noted (Return, p. 1), the Court's order of August 7, 2006, limits briefing to the issue of "whether some evidence supports the Governor's determination that petitioner poses an unreasonable threat to public safety considering her actual role in the murder and her progress in prison."

Respondent's defense to petitioner's claims consists of two allegations, (1) that the some evidence standard of review does not apply to these proceedings (Return, pp. 10-11), and (2) if it does apply, due process, which protects petitioner's liberty interest in her parole date, was not violated because the Governor's mere recitation of the (incorrect) facts of her second degree murder, her prior (absent) criminal record, and her early prison misconduct (which ended 16 years ago) satisfies the some evidence test sufficiently to forever preclude her parole. (Return, pp. 12-17). As petitioner will again demonstrate, supported by compelling, recently published state and federal authorities, both allegations are contrary to authority and meritless.

## I. The Some Evidence Standard, which Should not Apply to this Case, is Misapplied by Respondent

### A.

The "some evidence" standard of judicial review evolved from *Superintendent v. Hill* (1985) 472 U.S. 445, 455 ["*Hill*"]. See *In re Powell* (1988) 45 Cal.3d 894, 904. Petitioner respectfully objects to the application of the some evidence standard to her case. It is difficult to understand why the narrowest of standards should apply. First, the United States Supreme Court prescribed it in *Hill* to apply to a hearing at which disciplinary charges were based on a confidential source causing the prisoner's due process right

to be diminished by the prison's need for security and confidentiality. Petitioner's due process right is not diminished because neither the parole determination process used by BPH and the Governor nor adjudication of her habeas claims requires disclosure of a confidential source or involves any security concern.

More importantly, the State's courts that adopted *Hill*'s some evidence standard to review parole decisions held that life prisoners did ***not*** have a due process liberty interest in a parole grant. (*In re Powell, supra,* 45 Cal.3d at 911.) Because the contrary has now been established (*McQuillion,* 306 F.3d at 902; *Rosenkrantz,* 29 Cal. 4th at 621; *Sass,* ___ F.3d ___, 2006 WL 2506393, at pp. 2, 5), due process demands a finding of something more than "some" (*any*) evidence in the record to protect a vested liberty interest protected by the Due Process Clause.

Third, *Hill* excluded claims like those at bench that allege that the *procedure* used in the decision did not comply with state law. (472 U.S. at p. 457 ["respondents relied only upon the Federal Constitution, and did not claim that the disciplinary board's findings failed to meet evidentiary standards imposed by state law"].)

Petitioner knows of no other state whose parole statutes provide a protected liberty interest in parole, or any defined liberty interest of any sort extinguishable by the mere presence of any evidence whatsoever. To the contrary, in *Carrillo v. Fabian* (2005) 701 N.W. 2d 763, the Minnesota Supreme Court recently and explicitly held that the some evidence standard of review of a prison disciplinary action established in (*Superintendent v. Hill,* 472 U.S. 445(1985)) is inapplicable to the review of a correctional agency's decision affecting an inmate's parole date in a state whose statutes provide a protected liberty interest in parole. The Court held, based on the

tripartite test prescribed by the United States Supreme Court, that the "substantial evidence" standard of review is requisite to provide adequate due process.

Accordingly, Petitioner respectfully asks the Court to apply the substantial evidence standard to adjudicate her constitutional claims.

## B.

Respondent argues that some (any) evidence of an egregious commitment offense, in itself, satisfies the some evidence test as a sufficient ground to preclude parole interminably (neither the facts used by the Governor nor the level of parole suitability petitioner has maintained for more than a decade can ever improve).

The pivotal question is "some evidence of *what*"? Under the State's parole statutes and regulations, parole must be granted unless to do so would create "an unreasonable risk of danger" to public safety. See Pen C. § 3041, 15 CCR §§ 2401, 2402(a). The Governor articulated no nexus whatsoever between the offense facts recited and petitioner's *current* parole risk.

The State's parole determination statute requires that parole "shall normally" be granted (Pen.C § 3041, subd. (a)), *unless* "the gravity of the current convicted offense or offenses, or the timing and gravity of the current or past convicted offense or offenses, is such that a consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." (Subd. (b).) The statute thus requires more than what the Governor did in

petitioner's case – recite alleged commitment offense factors to establish a current parole risk to public safety – without hinting at any *nexus* between those facts and the alleged risk to public safety currently posed by petitioner's parole. The omission was crucial in view of the conclusions of the many forensic psychologists who reviewed the record of the offense and concluded that petitioner does not pose an undue risk to public safety.

The unambiguous language of the statute, that parole "shall normally" be granted "unless" either the "timing" or "gravity" of the commitment offenses *translates to* a current public safety risk, clearly requires articulation of at least a minimal *nexus* between the facts alleged to constitute an untimely or grave commitment offense, and a prospective parolee's *current* parole risk. Such a nexus may be established, e.g., if an offense was caused by or related to alcohol, drugs, gangs, or other factors that the inmate's prison record or forensic evaluations indicate may still be a public safety concern. The Governor merely recited aspects of the offense and petitioner's history before that time and during her early years in prison to imply that public safety *therefore* required her continued imprisonment (forever – the alleged facts can never change). The statue clearly required some nexus between the facts used to find petitioner unsuitable for parole and her current parole risk. None was set forth by the Governor because, after sixteen years of her exemplary reform, none exists in the record. Absent a nexus to current parole risk, the Governor's action flunks the some evidence test.

## II. Some Evidence of a Serious Commitment Offense Cannot Consistent with Due Process Justify the Interminable Preclusion of Petitioner's Parole Because her Accessory Role Constituted the Minimal Acts Requisite to her Conviction of Second Degree Murder, She has been Consistently Forensically Evaluated in View of her Offense Not to Pose an Undue Parole Risk to Public Safety, She has Served in Excess of the Prison Term Prescribed by the Regulations for the Facts of her Offense had it Resulted in a FIRST Degree Murder Conviction, and Because Preclusion of Parole on this Basis is Necessarily Interminable, Converting her Prison Term to Life With No Possibility of Parole

### A. The Governor's "Facts" are Grossly Inaccurate; Petitioner's Role, an Accessory to Second Degree Murder, Constituted the Minimum Conduct Necessary to Establish the Elements of that Offense

The Governor stated that petitioner "helped plan the kidnap *and murder*." (Exhibit C, p. 2; emphasis added.)  No such testimony was elicited against petitioner who was not tried.  In a codefendant's trial, a single witness testified that he overheard the three defendants mention a killing.  Petitioner did not contemplate murder or agree to do more than what she did, help set up the *kidnapping* by sending the victim to the store.  She intended, as revenge against her stepfather who had sexually and physically abused her for 12 years, to keep Tameron's location secret until his trial and then insure her testimony against him. The Probation Department report confirms that, hours after Cook and Hilton abducted the victim, the two decided to kill her. (Respondent's exhibit 3, p. 7.)  Petitioner was shocked and dismayed to learn of the victim's death. (Exhibit B, pp. 12-23.)  Had petitioner known that Tameron would be harmed, she would not have

participated in the kidnapping. Petitioner did not participate in, plan, anticipate, or contemplate a murder; she participated in a *kidnapping*.

Notably, the prosecutor's office, although notified, did not submit documents or attend petitioner's hearing to claim otherwise. Contrary to the Governor's notion, petitioner's statements are not "inconsistent." For more than 25 years she has consistently maintained that although murder may have been discussed at one point, it was not in the plan or anticipated by her. See Petition, pp. 10-11.

Accordingly, reversal of petitioner's parole grant based on the notion that she planned or premeditated a murder abrogated due process because it was arbitrary.

According to indisputable evidence, petitioner's role was to send the victim to the store where she would be kidnapped by Cook and Hilton. She was an accessory to the kidnapping and liable for the eventual homicide only vicariously. Because the acts performed by petitioner in the offense constituted the minimum criminal conduct necessary to establish the elements of second degree murder (implied malice aforethought, specific intent to kill, the eventual homicide), the use of her offense to preclude her parole violates due process. See *In re Rosenkrantz* (2002) 29 Cal.4[th] 616, 683; *In re Dannenberg* (2005) 34 Cal.4[th] 1061, 1095 (basing parole unsuitability on criminal conduct constituting the minimum requisite to conviction denies due process).

## B. Petitioner has Served in Excess of the Prison Term Prescribed for a First Degree Murder with these Facts

Petitioner detailed the calculations pursuant to the Board's regulations that set the maximum prison term for the facts of her second degree murder commitment offense at 10 years, 3 months, resulting in a parole date that lapsed in January *1992* (Petition, pp. 3-4 &fn. 2), considerably beyond the April *1990* parole date set by the 2004 panel's calculations (131-month term before deducting 875 days of pre-sentencing term credits [see respondent's exhibit 1, p. 1]). See Exhibit B, pp. 68-69. Respondent has not contested these facts.

Had the facts of petitioner's offense culminated in her conviction of *first* degree murder, the maximum prison-term prescribed by the Board's regulations for that offense lapsed in August *2000*.[1]

Accordingly, petitioner's imprisonment to date exceeds by ***more than 16 years*** the prison term set by the 2004 panel, exceeds by ***more than 14 years*** the maximum prison term prescribed for the facts of her second degree murder, and exceeds by ***more than six years*** the prison term prescribed for those facts had she been convicted of *first* degree murder.

The significance of these facts is reflected in a caveat set forth by the California Supreme Court in a case relied on in the Return, *In re Rosenkrantz, supra,* 29 Cal.4th 616. The second degree murder committed by Rosenkrantz was considerably more egregious than petitioner's offense.

---

[1] 15 CCR § 2403(a), subsec. II-A (prior relationship, indirect cause of death) prescribes a maximum (aggravated) term of 28 years, which would be reduced by the 73-months of term credit awarded by the 2004 panel (4 months for each disciplinary-free year in prison per 15 CCR § 2410). Considering petitioner's commitment date of February 1981, and 875 days of pre-sentencing term credit awarded by the sentencing court (respondent's exhibit 1, p. 1), the maximum prison term petitioner would serve for a first degree murder with the facts of her offense, 19 years, 6 months, lapsed in August 2000.

Rosenkrantz had purchased and practiced with an Uzi, laid in wait for the
victim, shot the victim ten times, watched him bleed to death on the street,
absconded, and threatened further violence. (29 Cal.4[th] at pp. 627-629.)
Accordingly, the Court found that the facts of Rosenkrantz' second degree
murder, akin to a premeditated first degree murder, justified the Governor's
decision at that point[2] to reverse a BPH panel's decision finding
Rosenkrantz suitable for parole. Importantly, the Court warned:

> Although I agree that evidence of premeditation and
> deliberation supports the conclusion that petitioner's crime
> was particularly egregious for a *second degree* murder, it
> is another matter whether any evidence would support the
> same conclusion for a *first degree* murder. Other than
> felony murders, first degree murders by definition involve
> premeditation and deliberation. Moreover, there was
> sufficient doubt over whether premeditation and
> deliberation existed to persuade a jury to acquit petitioner
> of first degree murder.

> Furthermore, petitioner's offense did not appear to partake
> of any of those characteristics that make an offense
> particularly egregious under the Board of Prison Terms'
> parole eligibility matrix for first degree murders, e.g.,
> torture, the infliction of severe trauma not involving
> immediate death, or murder for hire. (Cal. Code Regs., tit.
> 15, § 2403, subd. (b).) Nor is it certain that petitioner's
> lack of remorse immediately following the crime, by itself,
> would make the crime exceptional compared to other first
> degree murders.

---

[2] Four years later, after Rosenkrantz had served a term considerably shorter than
petitioner's, both the state and federal courts, based on the California Supreme Court's
caveat quoted above, held to the contrary and ordered his release on parole. The
authorities are detailed, *infra*.

The significance of the above observations is this: **there will come a point, which already may have arrived, when petitioner would have become eligible for parole if he had been convicted of first degree murder. Once petitioner reaches that point, it is appropriate to consider whether his offense would still be considered especially egregious for a *first degree* murder in order to promote the parole statute's goal of proportionality between the length of sentence and the seriousness of the offense.** (See *In re Ramirez* (2001) 94 Cal.App.4th 549, 570-571 [114 Cal.Rptr.2d 381] [in conducting parole proportionality analysis, the court considers the gravity of the offense in relation to the time in prison already served].) **Under this circumstance, the justification for denying his parole would become less clear, even under the deferential "some evidence" standard. Thus, future denials of petitioner's parole may warrant judicial reappraisal.**

(*Rosenkrantz, supra,* 29 Cal.4th at pp. 689-690; emphasis added.)

## C. The Interminable Denial of Petitioner's Parole Insured by this Process has Converted her Prison Term to Life Without the Possibility of Parole

Petitioner explained in the Petition that the only arguably viable ground supporting the Governor's decision was the facts and circumstances of her commitment offense,[3] and cited current authorities (*Biggs, Irons, Hudson*) supporting this claim. (Petition, pp. 18-21.) Petitioner respectfully revisits those authorities, updates the issue by quoting in detail several more recently issued decisions extremely relevant to her constitutional claim, and begs the Court's indulgence considering the length of this argument.

---

[3] Petitioner had no prior criminal convictions, violent or otherwise, and her early prison misconduct was followed by 16 years of exemplary disciplinary-free behavior and reform.

The authorities cited at pp. 9-10 of the Petition that permit parole denial to an otherwise qualified inmate whose commitment offense was particularly egregious when compared with other examples of the offense, place reasonable limits on discretion to preclude parole on that basis. Because the facts and circumstances of commitment offenses can never change, a contrary policy would convert sentences like petitioner's, 15 years to life with the possibility of parole, to life with no possibility of parole. See *Biggs, supra,* 334 F.3d at p. 916. Our State's courts warn:

> [T]he Legislature has clearly expressed its intent that when murderers—who are the great majority of indeterminate sentences—approach their minimum eligible parole date, the Board "shall normally set a parole release date." (Pen.C. § 3041, subd. (a).) The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted . . .
>
> (*Rosenkrantz,* 29 Cal.4th at p. 683, citing *In re Ramirez, supra,* 94 Cal.App.4th 549, 570.)

The Ninth Circuit recently reviewed the constitutional propriety of a BPH panel's use of a <u>first</u>-degree murder commitment offense to find a prisoner unsuitable for parole at his <u>first</u> hearing. The Court found no evidence to support most of the panel's grounds for unsuitability, but held that a particularly egregious commitment offense could be an appropriate basis for finding such a prisoner unsuitable for parole at an *initial* parole hearing. The Ninth Circuit cautioned:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole. . .
>
> A continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation. (*Biggs, supra*, 334 F.3d at 916-917.)

*Biggs*' holding has been relied on in addressing the issue here raised by Petitioner by the district courts and recently by the State's courts.

> In finding petitioner unsuitable at this fifth parole suitability hearing, the panel relied exclusively on unchanging factors: the commitment offense and petitioner's drug use at the time of the offense. In *Biggs*, the Ninth Circuit stated that the BPT was "*initially* justified" in finding Mr. Biggs unsuitable based on the circumstances of the offense and his conduct prior to imprisonment. 334 F.3d at 916 (emphasis added). However, the Ninth Circuit was not specific as to when reliance on the circumstances of the offense and conduct prior to imprisonment would "run contrary to the rehabilitative goals espoused by the prison system" and result in a due process violation. 334 F.3d at 917.

More important to the undersigned in assessing any due process violation is the fact that continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole. The court asks rhetorically--what is it about the circumstances of petitioner's crime or motivation which are going to change? The answer is nothing. The circumstances of the crimes will always be what they were, and petitioner's motive for committing them will always be trivial. Petitioner has no hope for ever obtaining parole except perhaps that a panel in the future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial.

Given that *no one* seriously contends lack of seriousness or lack of triviality at the present time, the potential for parole in this case is remote to the point of non-existence. Petitioner's liberty interest should not be determined by such an arbitrary, remote possibility. [FN2]

FN2. To a point, it is true, the circumstances of the crime and motivation for it may indicate a petitioner's instability, cruelty, impulsiveness, violent tendencies and the like. However, after fifteen or so years in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not possess those attributes, the predictive ability of the circumstances of the crime is near zero.

(*Irons*, 358 F.Supp.2d at 946-947.)

The U.S. District Court for the Northern District of California likewise held:

Now before the Court is petitioner's third denial of parole, which was the first denial, based solely on the facts of the crime. Petitioner's present situation falls under the same factual circumstances as *Biggs,* which held that a prisoner's due process rights are not violated the first time parole is denied based solely on the facts of the crime.

Petitioner has subsequently had a fourth hearing in August 2004, in which the BPT again denied parole based on the facts of the crime . . . He is due for his fifth parole hearing in August 2005.

A denial based on the unchanging facts of the crime at the August 2005 hearing would make it the third time that petitioner is denied parole solely on the basis of the facts of his convicted offense. At that time, petitioner's situation would be more factually similar to the *Irons* case and would more clearly require analysis of the concerns raised in *Biggs,* that continued denial based solely on the facts of the crime can raise serious questions of due process violations.

(*Hudson v. Kane,* 2005 WL 2035590 at p. 9 (N.D. Ca. 2005).)

In *Sanchez v. Kane* (C.D. Cal. August 1, 2006)__ F.Supp.2d __, 2006 WL 2252640, the district court for the Central District of California adjudicated some of the herein petitioner's claims. Sanchez had been denied parole for the fourth time (compared to *fourteen* times for petitioner), the only arguably viable ground being the gravity of his commitment offense. Sanchez's offense, like petitioner's, was second-degree murder, for which he had been incarcerated 17 years versus petitioner's 25 years.

The Court affirmed Sanchez' protected liberty interest in parole. (*Id.,* p. 8.) After rejecting several evidentiarily unsupported grounds, the Court

addressed the claim here at issue – the continued use of commitment

offenses to repeatedly preclude Sanchez' parole. Relying on the authorities

cited above the Court reasoned:

> Finally, the Governor relied upon the callous nature and
> circumstances of the crime, stating "[i]t was a planned
> calculated and cold-blooded murder demonstrating
> exceptionally callous disregard for human suffering ⋯ [and
> it] involved particularly egregious acts beyond the minimum
> necessary to sustain a conviction of second-degree murder."
> [] However, as the Board recognized, the events and
> circumstances surrounding petitioner's crime are unchanging.
> [] ("I want to explain to you that no matter what happens in
> your lifetime, the crime is never going to change. You
> understand that⋯⋯ That's always going to be there, period⋯⋯
> [T]he crime is never going to change⋯⋯").

> Although the Board or Governor is "initially justified" in
> relying on the gravity of an inmate's offense in denying him
> parole, *Rosas, 428 F.3d at 1232-33; Biggs, 334 F.3d at 916,*
> "continued reliance ⋯ on an unchanging factor, the
> circumstances of the offense and conduct prior to
> imprisonment, runs contrary to the rehabilitation goals
> espoused by the prison system and could result in a due
> process violation." *Biggs, 334 F.3d at 916-17; Irons v.*
> *Warden of Cal. State Prison-Solano, 358 F.Supp.2d 936, 947*
> *(E.D.Cal.2005).*

> Here, petitioner had three prior parole suitability hearings,
> after each of which he continued to demonstrate "exemplary
> behavior and evidence of rehabilitation[,]" *Biggs, 334 F.3d at*
> *916,* before the Board found him suitable for parole. Yet,
> petitioner has consistently maintained "positive institutional
> behavior" and "significant and proven self-control[,]" [] thus,
> "the predictive ability of the circumstances of the crime is
> near zero." *Irons, 358 F.Supp.2d at 947 n. 2; see also In re*
> *Scott, 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905, 920*
> ("The commitment offense can negate suitability only if
> circumstances of the crime reliably established by evidence

in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time."). Under these circumstances, the Governor's continued reliance on the circumstances surrounding the murder to deny petitioner parole violates due process of law. *Irons*, 358 F.Supp.2d at 947; *Scott*, 133 Cal.App.4th at 597-601, 34 Cal.Rptr.3d 905; *see also Johnson*, 2006 WL 195159 at *8 ("As recognized by the [Board,] the inhumanity of the murder will never change, it will not minimize in its shockingness over time.

A later decision that the murder 'wasn't so bad' will never be made, and if it were, such a decision would be clearly arbitrary. Therefore, if the Governor's decision to deny parole based on the nature of the offense is permitted to stand, contrary to the parole statutes which logically measure parole eligibility on the reformation of the prisoner after the proscribed period of punishment, parole eligibility is an impossibility, not a possibility. The parole statutes do not vest the Governor with the power to re-sentence petitioner.").

For the reasons stated herein, the Court finds the Governor's reversal of the Board's grant of parole to petitioner is not supported by "some evidence" in the record, *Hill*, 472 U.S. 455-56, 105 S.Ct. at 2774; *McQuillion*, 306 F.3d at 912; thus, petitioner was denied due process. Accordingly, "the California Supreme Court's silent denial of this claim was an unreasonable application of clearly established Supreme Court authority [,]" *Irons*, 358 F.Supp.2d at 949, and petitioner "is therefore entitled to the release date ordered by the Board." *Scott*, 133 Cal.App.4th at 603, 34 Cal.Rptr.3d 905.

. . . IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; (3) finding the Governor's reversal of the Board's decision to grant parole to petitioner is not supported by

"some evidence" in the record, and petitioner was, thus, denied due process of the law; and (4) granting petitioner's petition for writ of habeas corpus and discharging petitioner from custody and ordering petitioner to be released on parole forthwith, and entering Judgment accordingly.

(*Sanchez v. Kane, supra,* 2006 WL 2252640 at 10-11.)

In *Martin v. Marshall* (N.D. Cal. May 17, 2006) 431 F.Supp.2d 1038, the U.S. District Court for the Northern District of California reached the same conclusion and fashioned the same remedy in a similar second-degree murder case examining a decision by the Governor reversing Martin's parole grant, effectively denying parole to Martin for the fifth time. Unlike petitioner, Martin had a prior history of violent crime, and committed *twenty* rules violations while in prison. Like petitioner, Martin's parole risk was evaluated to be in the low-to-moderate range. (*Id.*, pp. 3-4.) After affirming Martin's protected liberty interest in parole and rejecting some of the grounds asserted to deny parole, the Court analyzed the crime factors ground:

> . . . these facts date from at or before the time of the crime. Because petitioner cannot change the past, denying petitioner parole based only on the facts surrounding the crime itself effectively changes his sentence from twenty years-to-life into life imprisonment without the possibility of parole. The Supreme Court has recognized that [t]he requirements of due process vary with the private and governmental interests at stake and the circumstances of the alleged deprivation···· To insure that a state-created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by state statute to be considered, but also the concepts embodied in the Constitution requiring due process of law. *Biggs,* 334 F.3d at 916 (citing *Morrissey v. Brewer,* 408 U.S. 471, 481,

92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Greenholtz*, 442 U.S. at 7-8, 99 S.Ct. 2100). In *Biggs* [detailed above] . . .

This case presents a stronger case for release than *Biggs* for several reasons. First, petitioner's commitment offense was less serious than the petitioner's in *Biggs.* The *Biggs* petitioner was involved in a violent, manipulative, and premeditated [first-degree] murder, while petitioner here acted impulsively and at least in part in response to the circumstances. *See id. at 912.* Second, the *Biggs* petitioner had not yet served the full terms of his sentence, while petitioner here has exceeded his sentence by approximately six years. Finally, unlike petitioner here, the petitioner in *Biggs* had not been granted parole by the original panel hearing his case. Petitioner here has "demonstrate[d] exemplary behavior and evidence of rehabilitation," as required by the *Biggs* court, for a significant period of time. Therefore, the sole reliance on petitioner's commitment offense in denying him parole impinges on petitioner's constitutional liberty interest in parole.

The Eastern District of California has also considered the problem of continuing to rely on an unchanging factor in denying an inmate a parole release date. *See Irons v. Warden of California State Prison-Solano*, 358 F.Supp.2d 936, 947 (E.D.Cal.2005). The court in *Irons* noted [detailed in cases cited above] . . .

. . . Applying the principles espoused in *Irons* and *Biggs* to this case, the court finds that there was no evidence to support the Governor's reversal of petitioner's parole grant. As the granting Board found, petitioner has not had a significant disciplinary violation since 1995. [summary of post-conviction record].

The Governor's sole reliance on "the circumstance of the offense and conduct prior to the offense," *Biggs, 334 F.3d at 917,* constitutes a due process violation. The court finds no evidence to support any of the Governor's reasons for denying parole, and therefore finds that the Superior Court's

denial of the petition for habeas corpus was objectively
unreasonable.

(*Martin v. Marshall*, 431 F.Supp.2d at 1046-1048.)

Please see the district court's yet unpublished follow-up order for
Martin's release. (Exhibit H.)

In another new decision *Rosenkrantz v. Marshall* (C.D. Cal. August 1,
2006) __ F.Supp.2d__, 2006 WL 2327085, the central district of California
reaffirmed the reasoning supporting petitioner's claims. Like petitioner,
Rosenkrantz had spent nearly two decades in prison for a second-degree
murder. See facts at p. 9, *supra*. Rosenkrantz had been denied parole five
times, the most recent challenged decision being based on the gravity of his
commitment offense. (*Id.*, 2006 WL 2327085 at pp. 1-10). The court
explained why continued reliance on the gravity of the commitment offense
abrogated due process:

> Based upon the gravity of the offense, the BPT found that
> petitioner would pose an unreasonable risk of danger if
> released. The BPT characterized petitioner's offense as
> "inexplicable," and as having been carried out "in an
> especially cruel and callous manner" and "in a dispassionate
> and calculated manner such as an execution style murder." It
> added that "the victim was abused," and that "the motive for
> the crime is inexplicable." [] The Superior Court, which
> offered the last reasoned decision on petitioner's claim,
> concluded that the BPT's finding that offense was "more
> aggravated than the minimum necessary to sustain a
> conviction for second-degree murder" was supported by
> some evidence.[] This was at least the fifth time that the
> BPT (or a state court reversing a BPT panel's grant of
> parole), denied parole based upon the unchanging facts of
> petitioner's commitment offense.

In *Biggs* [discussion of *Biggs* similar to that in the previously cited cases] . . . One district court has explained the rationale underlying this aspect of *Biggs* as follows: Whether the facts of the crime of conviction, or other unchanged criteria, affect the parole eligibility decision can only be predicated on the "predictive value" of the unchanged circumstance. Otherwise, if the unchanged circumstance per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could be indefinitely and forever delayed based on the nature of the crime even though the sentence given set forth the possibility of parole-a sentence given with the facts of the crime fresh in the mind of the judge.

While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision.

Nobody elected the BPT commissioners as sentencing judges. Rather, in some realistic way, the facts of the unchanged circumstance must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, after four or five eligibility hearings, but counterpoised against the backdrop of prison events. *Bair v. Folsom State Prison*, 2005 WL 2219220, *12 n. 3 (E.D.Cal.2005)*, report and recommendation adopted by 2005 WL 3081634 (E.D.Cal.2005)*.

In the circumstances of this case, the BPT's continued reliance upon the nature of petitioner's crime to deny parole in 2004 violated due process. First, continued reliance upon the unchanging facts of petitioner's crime makes a sham of California's parole system and amounts to an arbitrary denial of petitioner's liberty interest. Petitioner had been denied parole on six occasions prior to the determination he now challenges. Continued reliance upon the unchanging characterization of petitioner's offense amounts to converting petitioner's sentence of seventeen years to life to a term of life without the possibility of parole. As one court has put it [discussion of *Irons, supra*, repeated].

. . . the statement that the crime was "especially callous" does not fit within the regulations, which provide that one factor to consider is whether "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." 15 Cal.Code Regs. § 2402(c)(1)(D). According to California appellate courts, this provision contemplates that the victim was made to suffer in some exceptional way. *See Scott*, 119 Cal.App.4th at 892, 15 Cal.Rptr.3d 32 (holding that a determination that the crime had been carried out with "exceptional disregard for human suffering" meant that it was perpetrated in an especially cruel manner with disregard for human suffering and required more than the simple cruelty and callousness necessary to find that a defendant killed with malice); *In re Smith*, 114 Cal.App.4th 343, 366-367, 7 Cal.Rptr.3d 655 (2003) (same).

. . . As it is required to do, the BPT considered whether petitioner was suitable for parole-that is, whether he presented an unreasonable risk of danger to society if released. *See* Cal.Penal Code § 3041(b); 15 Cal.Code Regs. § 2402. The BPT determined that petitioner posed an unreasonable risk of danger (and, therefore, was unsuitable for parole) because his crime was especially heinous. While relying upon petitioner's crime as an indicator of his dangerousness may be reasonable for some period of time, in this case, continued reliance on such unchanging circumstances-after nearly two decades of incarceration and

half a dozen parole suitability hearings-violates due process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness that it does not satisfy the "some evidence" standard.

After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is nil. *See Johnson v. Finn,* 2006 WL 195159 * 8 n. 3 (E.D.Cal.2006) (stating that "the seriousness of the crime had predictive value for the dangerousness of petitioner's release for the first, second, perhaps third suitability hearing. But as the years go by, this factor loses its predictive value in light of the growing experience to the contrary (assuming petitioner's record in prison is exemplary)."); *Irons,* 358 F.Supp.2d at 947 n. 2 [citation above] Even the California courts have said as much. *Shaputis,* 135 Cal.App.4th at 231-232, 37 Cal.Rptr.3d 324 ("The only evidence before the BPT was that [the inmate] had more than a decade of demonstrated commitment to remaining sober, and there was not a scintilla of violence in his nearly two decades of incarceration.

Accordingly, the BPT's conclusion the inmate remained a danger to society, to the extent it was premised on a former lifestyle that all of the evidence showed was a historical relic, is so lacking in any medical, psychological or behavioral evidentiary support that it is arbitrary and capricious, within the deferential standards…"); *Scott,* 133 Cal.App.4th at 595, 34 Cal.Rptr.3d 905 ("The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time.").

Furthermore, the general unreliability of predicting violence is exacerbated in this case by several facts, including petitioner's young age at the time of the offense, the passage of nearly twenty years since that offense was committed, and

the fact that all of the other evidence in the record clearly indicates that petitioner is suitable for parole.

. . . For all of these reasons, in the circumstances of petitioner's case, the facts surrounding petitioner's crime no longer amount to "some evidence" supporting the conclusion that petitioner would pose an unreasonable risk of danger if released on parole. Petitioner's case is exactly what *Biggs* envisioned when it stated that repeated refusals to grant a parole release date to an inmate with an exemplary post-conviction record may violate the prisoner's due process rights. *Biggs,* 334 F.3d at 919. The record is replete with evidence of petitioner's remorse and rehabilitation, including glowingly positive psychological reports, extensive self-improvement through educational and vocational advancements as well as therapy, valued service in promoting the penological goals of the prison, and nearly two decades of disciplinary-free incarceration. . . . As the Supreme Court has recognized, "[t]he behavior of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release." *Greenholtz,* 442 U.S. at 15.

Regardless of whether the BPT ever was entitled to rely upon the commitment offense to find that this particular petitioner posed an unreasonable risk of danger and was unsuitable for parole, under these unusual circumstances, the BPT's continued reliance on the commitment offense violates due process because it resulted in an arbitrary decision and because the facts surrounding the offense do not now constitute "some evidence" with "some indicia of reliability" of petitioner's dangerousness. *See Hill,* 472 U.S. at 455; *Biggs,* 334 F.3d at 917; *Irons,* 358 F.Supp.2d at 947; *Masoner v. State,* 2004 WL 1080177 *1-2 (C.D.Cal.2004) ("Although the gravity of the commitment offense and other pre-conviction factors alone may be sufficient to justify the denial of a parole date at a prisoner's initial hearing, subsequent BPT decisions to deny a parole date must be supported by some post-conviction evidence that the release of an inmate is against the interest of public safety.

Masoner's successful rehabilitation and spotless prison
record, in combination with his having served 21 years and
the type of crime usually associated with such a sentence
under the Universal Terms Matrix, indicate that there is no
legitimate post-conviction justification for the BPT's repeated
refusal to grant him a parole date."); *see Johnson*, 2006 WL
195159 at *8 ("The characterization of petitioner's crime as
an execution style-murder is accurate. However, as discussed
above, the 2001 hearing was petitioner's twelfth suitability
hearing. It had been 24 years since petitioner committed the
murder. . . [He] had done everything he could in prison to
better himself. Under these circumstances, the nature of the
offense had lost any predictive value and the continued
reliance on it to find petitioner unsuitable violated due
process. Accordingly, the court finds that this factor was not
supported by some evidence.").

Because there is no reliable evidence supporting the BPT's
conclusion that petitioner is unsuitable for parole, that
determination violates due process. *See Hill*, 472 U.S. at 455.
The state court's determination to the contrary was based
upon an unreasonable determination of the facts in light of
the evidence presented during the parole hearing and
amounted to an unreasonable application of clearly
established Supreme Court precedent. *See Hill*, 472 U.S. at
455; *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir.),
*cert. denied*, 543 U.S. 1038, 125 S.Ct. 809, 160 L.Ed.2d 605
(2004). Accordingly, petitioner is entitled to relief. *See*
*McQuillion*, 306 F.3d at 912 (finding that petitioner was
entitled to relief where none of the four grounds for recession
of petitioner's parole release date was supported by "some
evidence," and therefore the decision violated due process);
*Irons*, 358 F.Supp.2d at 947-951 (granting habeas relief
where the BPT improperly relied upon the unchanging
circumstances of the commitment offense in finding
petitioner unsuitable for parole in his fifth parole suitability
hearing, and also asserted that petitioner needed more
therapy, a conclusion that lacked any support in the record);
*Saifullah*, 2005 WL 1555389 at *13-16 (granting habeas
relief where the record contained no evidence supporting the

BPT's decision that petitioner was a danger to society and unsuitable for parole based upon (a) his commitment offense, (b) his prior criminal history, and (c) a rules violation which resulted when, based upon his religious beliefs, petitioner refused to cut his hair).

. . . For the foregoing reasons, the petition should be granted . . . It is hereby adjudged that the petition for a writ of habeas corpus is granted, and respondent is directed to release petitioner on parole within thirty (30) days of the date of entry of judgment.

(*Rosenkrantz v. Marshall, supra,* __ F.Supp.2d __, 2006 WL 2327085 at pp. 12-17.)

The *State's* courts now adopt and apply the reasoning of those cases. In *In re Scott* (2005) 133 Cal.App.4[th] 573, the Court of Appeal applied *Biggs* to reverse parole denial in a second-degree murder case. The Court explained why reliance on the gravity of a murder did not constitute "some evidence" that Scott was currently unsuitable for parole; it was far outweighed by evidence of Scott's exemplary reform and low parole risk confirmed by his forensic evaluations. The Court explained:

The Governor's determination that the gravity of Scott's offense shows him unsuitable for release is doubly flawed. Not only is the determination unsupported by "some evidence," but the Governor failed to consider a factor indicative of suitability that he was required to take into account. We address the latter problem before turning to the insufficiency of the evidence of unsuitability . . .

[P]utting aside factors relating to his offense and prior conduct, there is no dispute that all other applicable regulatory criteria clearly indicate Scott is suitable for release on parole. He has no juvenile record, possesses a stable social history, has performed acts which tend to indicate the presence of remorse, his age

reduces the probability of recidivism, he has made realistic plans for release, and his activities while in prison indicate an enhanced ability to function within the law. The chief reason the Governor nevertheless found Scott unsuitable for release was the gravity of his offense.

. . . [the] Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense "alone" is correct (*Rosenkrantz, supra*, 29 Cal.4th at p. 682, 128 Cal.Rptr.2d 104, 59 P.3d 174) [ ] but the proposition must be properly understood . . . Reliance on such an immutable factor "without regard to or consideration of subsequent circumstances" may be unfair (*In re Smith* (2003) 114 Cal.App.4th 343, 372, 7 Cal.Rptr.3d 655), and "runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (*Biggs v. Terhune, supra*, 334 F.3d at p. 917.) . . .

The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time [FN9] (*Irons v. Warden of California State Prison--Solano* (E.D. Cal. 2005) 358 F.Supp.2d 936, 947, fn. 2.) Thus, denial of release solely on the basis of the gravity of the commitment offense warrants especially close scrutiny . . .

. . . Under Board regulations, aspects of the commitment offense may indicate unsuitability or suitability for release. The offense is indicative of *unsuitability* when it was committed "in an especially heinous, atrocious or cruel manner" (Cal.Code Regs., tit. 15, § 2402, subd. (c)(1)) . . . there is not "some evidence" that the gravity of Scott's offense shows him unsuitable for release . .

Before explaining the insufficiency of this evidence, it is necessary to remember that denial of parole based upon the nature of the offense alone may rise to the level of a due process violation . . .

For example, premeditation was considered in *Rosenkrantz* because, though the prisoner had been convicted only of second degree murder, the evidence showed " 'a full week of careful preparation, rehearsal and execution,' " and that the prisoner, who "fired 10 shots at close range from an assault weapon and fired at least three or four shots into the victim's head as he lay on the pavement," carried out the crime with "planning, sophistication or professionalism." (*Rosenkrantz*, at p. 678, 128 Cal.Rptr.2d 104, 59 P.3d 174.)

. . . the record contains no evidence Scott committed his offense "in an especially heinous, atrocious or cruel manner," or that the nature of his crime indicates he poses a continuing threat to the public safety if released. Indeed, the record contains abundant uncontradicted evidence to the contrary. All of the many psychological evaluations of Scott [indicated] there was a low risk he would commit another violent act if released . . . The life prisoner evaluation report prepared by the Department of Corrections reached the same conclusion . . .he "would pose a low degree of threat to the public at this time if released from prison." The Governor may believe Scott would pose an unreasonable risk of danger to society if now released from prison, but that opinion finds no factual support whatsoever in the record that was before him.

(*In re Scott, supra*, 133 Cal.App.4th at pp. 594-596; rev. den. November 30, 2005.)

Also, simultaneously with the federal court's opinion in *Rosenkrantz v. Marshall*, which involved a 2004 hearing at which a BPH panel denied parole, the Los Angeles County Superior Court granted identical relief from Rosenkrantz' 2005 parole denial on the same grounds. See exhibit I.

Respondent's notions that *Biggs* is "dicta" and that the Ninth Circuit's *Sass* decision (*Sass v. California Board of Prison Terms* (9th Cir. 2006) 2006 WL 2506393) "undermined" *Biggs* (Return, p. 15) are inaccurate.   If *Biggs* is "dicta," *Sass* is more so.  The thrust of the Ninth Circuit's holding in *Sass*

was to reaffirm its decisions in *Biggs* (*Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 914), and *McQuillion v. Duncan* (9th Cir. 2002) 306 F.3d 895, 901-903, and the California Supreme Court's holding in *In re Rosenkrantz*, *supra*, 29 Cal.4th at pp. 660-661, that California's indeterminately sentenced inmates enjoy a liberty interest in parole protected by due process. True, *Sass* upheld a district court decision supporting a BPH decision finding Sass unsuitable for parole, but that finding, disposed of in two paragraphs, was based on the facts of Sass's *third* parole hearing which are inapposite to petitioner's.

Petitioner's case is more compelling than any of the foregoing ones. Biggs was attending his *first* parole hearing. Petitioner has been imprisoned for 25 years after serving the equivalent of 2½ years in jail. She was eligible for parole *17 years ago* and has served *2 to 2½ times* the minimum and *maximum* terms prescribed by BPH's regulations for her second degree murder and *six years in excess of the maximum term prescribed had the murder been first degree.* She has been repeatedly declared a low parole risk to public safety but remains imprisoned despite being found suitable for parole by two unanimous BPH hearing panels and two unanimous BPH review panels.

Because petitioner can improve neither her early prison misconduct, nor the maximum level of parole suitability, conduct, and reform she has achieved and maintained for sixteen years, nor the facts of her commitment offense and prior history, however viewed, preclusion of her parole based thereon is necessarily interminable. The process has converted her prescribed and imposed prison term, 15 years-to-life with the possibility of parole, defined by the Legislature as a *probability* of parole (see Pen.C. § 3041(a): panel "shall normally set a parole release date"), to life with no

possibility of parole.  Barring judicial intervention, petitioner can *never* parole – unless, as the Court in *Irons* postulated, some future governor decides that the former governors were wrong or that petitioner's role in the offense was not particularly egregious after all.  Neither the State's parole laws and regulations, nor the Due Process Clause, permits petitioner's liberty interest in her parole date to be extinguished based on such extreme speculation and arbitrariness.

## CONCLUSION

The Court asked, "whether some evidence supports the Governor's determination that petitioner poses an unreasonable threat to public safety considering her actual role in the murder and her progress in prison."

The answer is, emphatically, "NO."  *No* evidence supports that determination because

(1) the conclusion that petitioner's parole currently poses an "unreasonable threat" to public safety is inapposite to the record and not supported by a shred of relevant, reliable evidence;

(2) the conclusion is based on facts that are inaccurate, outdated, inherent in the definition of the commitment offense, and/or irrelevant to petitioner's current parole risk;

(3) no nexus has been set forth or exists between the factors set forth in support of the conclusion and petitioner's current parole risk, forensically determined to be in the low range;

(4) petitioner's role in a murder that she did not plan or contemplate was peripheral, and her criminal conduct constituted the minimum requisite to establish the elements and her guilt of second degree murder;

(5) even if her role in the murder was particularly egregious, that fact is not some evidence of her current parole unsuitability because she has served six years in excess of the maximum prison term prescribed for the facts of her offense had she been convicted of first degree murder therefor; and

(6) some evidence of unchangeable facts of a commitment offense cannot consistent with due process be employed, as here, to extinguish the prescribed possibility of parole and petitioner's protected liberty interest in her (twice) properly granted parole date.

Accordingly, habeas corpus relief should be granted vacating the Governor's action of October 11, 2004, that reversed BPH's second grant of parole, reinstating BPH's decision of May 17, 2004, releasing petitioner on parole on the date calculated therein, and ordering CDCR to credit her parole term with the number of days of her prison confinement in excess of the prison term calculated by BPH, after deducting statutory and regulatory postconviction credit to which she is entitled by law.

Dated: _9-25-06_ , 2006

Respectfully submitted,

Adrian T. Woodward
Counsel for Petitioner
BRANDEE TRIPP

**EXHIBIT H**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EULOGIO MARTIN,

               Petitioner,

     v.

JOHN MARSHALL, Warden,

               Respondent.

No. C 05-3486 MHP

MEMORANDUM & ORDER
Re: Request for Modification of
Judgment

16    Eulogio Martin, an inmate at the California Men's Colony in San Luis Obispo, California,
17 filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. section 2254. On May 17,
18 2006 the court issued a memorandum and order concluding that Governor Gray Davis's reversal of
19 the Board of Prison Terms's ("Board's") decision to grant petitioner parole was unsupported by any
20 evidence. As a remedy, the court ordered that respondent either release petitioner or grant him a new
21 parole review within sixty days of the order.

22    Petitioner subsequently filed a motion for reconsideration or modification of judgment,
23 requesting that the court amend its May 17 order to require petitioner's immediate and unconditional
24 release. In support of his request, petitioner argues that remand to the Board and Governor would be
25 futile given the court's finding that no evidence supported the Governor's previous reversal.
26 Respondent objects that petitioner has not established any valid basis for seeking reconsideration
27 under Local Rule 7-9. Respondent also disagrees with the merits of petitioner's request, arguing that
28 it is within this court's discretion to remand to the Board—particularly because Governor Davis is no

UNITED STATES DISTRICT COURT
For the Northern District of California

1   longer in office, and that if the Board again grants parole, a review of petitioner's suitability by

2   current Governor Arnold Schwarzenegger might not be futile.

3        Complicating the current posture of the petition is the fact that subsequent to the reversal by

4   Governor Davis which gave rise to this petition, on June 23, 2004 the Board conducted another

5   parole review for petitioner and reversed its previous position, finding petitioner unsuitable for

6   release. The Board based its finding of unsuitability on three factors. First, the Board noted the

7   seriousness of petitioner's crime. Pet'r's Exh. M at 85. Second, the Board noted that one of

8   petitioner's disciplinary violations, which the Board previously categorized as minor, was originally

9   charged as a more serious offense. Id. at 87. Third, the Board found that the psychological report

10   issued on February 28, 2003 was "not totally supportive of release," classifying petitioner in the "low

11   to moderate" category for risk of future violence. Id.

12        The Board's denial is striking in a number of respects. First, in focusing on the severity of

13   the original crime, the Board appears to have adopted Governor Davis's reasoning in reversing the

14   previous grant of parole. This court has already found that factor to be insufficient to support a

15   denial. Second, the other two facts considered by the Board—the disciplinary violation and the 2003

16   psychological report—were already before the Board when it granted petitioner parole in 2003. In

17   the 2003 opinion, the psychologist's evaluation was found to support release; in 2004, the same

18   opinion was found to weigh against release. Similarly, the fact that petitioner had committed no

19   severe violations of prison rules was found to support release in 2003, while one of the same non-

20   severe offenses was found to weigh against release in 2004.

21        In sum, the Board appears to have capitulated to the blanket no-parole policy described by

22   this court in its previous order, abandoning its role as an independent assessor of petitioner's

23   eligibility. This capitulation is particularly troubling in light of the Board's vigorous assertions of

24   independence during the 2003 hearing. See Pet'r's Exh. B at 10 ("I'm a Deputy Commissioner. I'm

25   a civil servant. I am not a Governor appointee."); id. at 11 ("I do not know the Governor. I have

26   never gotten direction from the Governor."); id. ("We're a different body and we do what we—what

27

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  we do based upon the law. So obviously, I'll have to overrule your objection [that the Governor has

2  imposed a no-parole policy].").

3        In light of the Board's apparent abandonment of its independent role—which occurred after

4  Governor Schwarzenegger took office—the court finds that a remand would indeed be futile. The

5  Board denied parole in 2004 on the basis of the same record which this court found to be

6  insufficient. Cf. McQuillion v. Duncan, 342 F.3d 1012, 1015 (9th Cir. 2003) ("Since we have

7  reviewed the materials that were before the Board and found no evidence to support a decision other

8  than the one reached by the Board, a remand to the Governor in this case would amount to an idle

9  act."). The court also notes that remand to the Board in this case would be unfair, because if the

10  Governor had properly upheld the Board's 2003 finding of suitability for parole, petitioner would

11  have been released—foreclosing the possibility of a subsequent denial of parole by the Board.

12        As for respondent's contention that there are no proper grounds for reconsidering the

13  remedial portion of the court's May 17 order, the court notes that it did not consider the substance of

14  the Board's 2004 denial in issuing its May 17 order. See Martin v. Marshall, --- F. Supp. 2d ---,

15  No. C 05-03486, 2006 WL 1344584, at *11 n.2 (N.D. Cal. May 17, 2006) (Patel, J.). Upon

16  reconsideration, the 2004 denial is highly material to the appropriateness of the remedy. See Civil

17  L.R. 7-9(b)(3) (allowing for reconsideration upon a failure to consider material facts which were

18  previously before the court).

19        Petitioner also requests that time served beyond the original parole date be deducted from

20  petitioner's post-release parole period. Respondent objects that petitioner did not request this relief

21  in his petition, and further objects that "credits" cannot be applied to reduce the length of a parole

22  period. With respect to respondent's first objection, respondent cites no authority for the proposition

23  that petitioner is required to spell out the precise details of the remedy requested in his petition.

24  With respect to the second objection, the cases cited by respondent are inapplicable, as they pertain

25  to the use of "good time" credits to reduce the length of parole. See, e.g., People v. Jefferson, 21

26  Cal. 4th 86, 95–96 (1999). Here, in contrast, petitioner seeks to have the actual surplus time served

27  in prison deducted from his parole period. See McQuillion, 342 F.3d at 1015.

28

3

1     In sum, given the facts and law previously omitted from consideration, the court therefore

2  amends its May 17 order as follows: the petition for habeas corpus is GRANTED.  Petitioner is

3  ordered to be released on parole forthwith.

4

5     IT IS SO ORDERED.

6  Dated: July 21, 2006

7

8                                     MARILYN HALL PATEL
                                      District Judge
9                                     United States District Court
                                      Northern District of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT I

Los Angeles Superior Court

**JUN 2 6 2006**

John A. Clarke, Executive Officer/Clerk

By _Joseph M. Pulido_ , Deputy

JOSEPH M. PULIDO, S.C.C.
233210

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| In re, | ) Case No.: BH003529 |
| | ) ORDER RE: WRIT OF HABEAS CORPUS |
| ROBERT ROSENKRANTZ, | ) |
| Petitioner, | ) |
| On Habeas Corpus | ) |
| | ) |
| | ) |

The court has read and considered petitioner's Writ of Habeas Corpus filed on August 17, 2005, as well as the return and denial filed in response to the court's order to show cause. Having independently reviewed the record, giving deference to the broad discretion of the Board of Prison Hearings ("Board") in parole matters, the court concludes that the Board's decision denying petitioner parole is not supported by "some evidence."

Petitioner is currently serving a sentence of 15 years to life with a two-year firearm enhancement following his 1986 conviction of second degree murder. Petitioner's minimum eligible parole date was January 23, 1996. Petitioner asserts constitutional claims, including the argument that the Board violated its regulations and petitioner's right to due process by its refusal to set a parole date despite its inability to find him unsuitable for parole or to deem him an unreasonable risk to public safety if paroled.

On April 25, 2005, the Board denied petitioner parole for one year. In denying petitioner parole, the Board relied upon the circumstances of the commitment offense. When determining

ep

1

1   unsuitability based on commitment offense, the Board may consider as a factor whether the

2   victim was abused, defiled or mutilated during or after the offense. (See Cal. Code Regs., tit. 15,

3   § 2402(c)(1)(C).) Here, the Board found that the victim was "abused" due to "the number of

4   times he was shot and the manner in which he was shot." In addition, the Board concluded that

5   the case "rises to the highest level of second-degree murder." The Board further stated in its

6   decision that the Deputy District Attorney and the Los Angeles Sheriff's Department opposed

7   parole. While the Board is required to consider such opposition (see Penal Code section 3042),

8   that opposition is not a factor on which the Board may rely to deny parole as enumerated in title

9   15, section 2281 of the California Code of Regulations.

10       Towards the conclusion of the hearing, the Board summarily mentioned its concern that

11   petitioner is a danger to his brother, Joey. The court finds that this assertion is not only

12   unsupported by the record, but belied by the record, which contains documented evidence that

13   contradicts any fear that the petitioner is a threat to his brother's safety. Furthermore, the court

14   rejects the Board's inference that the absence of yearly supportive letters from petitioner's

15   brother shows that petitioner is a danger to his brother. In fact, the petitioner's denial and

16   traverse draws attention to a recent psychological evaluation addressing and dismissing the

17   Board's concern for the safety of petitioner's brother. However, because this psychological

18   evaluation was not evidence before the Board at the time of petitioner's hearing, the court may

19   not properly rely upon it in reviewing the Board's decision. Regardless, the court finds that there

20   is no evidence in the record that supports the conclusion that petitioner remains a danger to his

21   brother.

22       The Board's sole reliance on the gravity of the offense to justify denial of parole can be

23   initially justified as fulfilling the requirements set forth by state law. (*Biggs v. Terhune* (9th Cir.

24   2003) 334 F.3d 910, 916.) However, over time, should petitioner continue to demonstrate

25   exemplary behavior and evidence of rehabilitation, denying a parole date simply because of the

26   nature of the commitment offense raises serious questions involving his liberty interest in parole.

27   (*Id.* at p. 917.) Here, petitioner's record is replete with reports of petitioner's exemplary conduct

28   as well as his vocational and educational achievements over a period of many years. Indeed,

ep                   2

1   petitioner is a model prisoner in every respect. A parole decision supported by some evidence

2   may nonetheless abrogate due process if it did not consider and weigh all favorable evidence.

3   (*In re Capistran* (2003) 107 Cal.App.4th 1299, 1306.)

4        The court finds that petitioner's continual parole denials have been based mainly on the

5   gravity of the commitment offense, the circumstances of which can never change. Therefore, the

6   Board's continued sole reliance on the commitment offense will essentially convert petitioner's

7   original sentence of life with the possibility of parole into a sentence of life without the

8   possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his

9   crime was not serious enough to warrant a denial of parole. (*Irons v. Warden* (E.D. Cal. 2005)

10  358 F.Supp.2d 936, 947.)

11       Prior Board panels have found petitioner suitable for parole. Petitioner was found

12  suitable for parole on June 18, 1996, but a review unit later disapproved the parole grant. At

13  subsequent hearings in 1996, 1997 and 1998, petitioner was found unsuitable for parole based on

14  the gravity of his offense. On September 9, 1999, petitioner was found unsuitable for parole but

15  the panel set his prison term. On November 18, 1999, Governor Davis reversed petitioner's

16  parole grant. On June 30, 2000, a new panel found petitioner suitable for parole, but Governor

17  Davis reversed its decision on October 28, 2000. Petitioner has now served in excess of the

18  maximum term for both second degree and first degree murder. Therefore, the commitment

19  offense should no longer function as a factor for unsuitability and in that case, it should no longer

20  operate as "some evidence" to support the Board's parole denial. Petitioner has reached the

21  point in which the denial of parole can no longer be justified by reliance on his commitment

22  offense. The Board's continued reliance on the circumstances of the offense runs contrary to the

23  rehabilitative goals espoused by the prison system and has violated petitioner's due process.

24  //

25  //

26  //

27  //

28  //

ep

3

1    Therefore, this court orders that the petition for writ of habeas corpus be, and hereby is,

2  granted.

3

4  June 26, 2006

5

6                                              DAVID S. WESLEY

7                                              Judge of the Superior Court

8  Clerk to give notice.



9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ep

4

JUL 17 2006

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

JOSEPH M. PULIDO, S.C.C.
233219

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re,                                    )   Case No.: BH003529
                                          )
ROBERT ROSENKRANTZ,                       )   ORDER
                                          )
              Petitioner,                 )
                                          )
                                          )
         On Habeas Corpus                 )
                                          )
                                          )
                                          )

In papers filed on July 18, 2006, petitioner requested to be released from prison on parole or suitable bail pending final disposition of this Court's order in the matter. The Court issued an order on July 24, 2006 denying petitioner's request.

Having considered the matter further, the Court orders its July 24, 2006 order vacated as it pertains to petitioner's request for release. Instead, the Court finds that petitioner's request for release is supported by some evidence and is with merit. Petitioner's request for release on parole until final disposition of this matter is granted.

As a result of this Court granting of petitioner's writ on June 26 2006, the most petitioner could have expected under normal circumstances was that the Board of Parole Hearings would grant a new hearing consistent with the Court's ruling. However, the Court has learned that petitioner has in fact again been found suitable for parole on May 25, 2006. As a result, nothing could be accomplished by ordering the Board of Parole Hearings to hold another suitability

-1-

1   hearing. Therefore, the Court's June 26, 2006 order shall be amended by adding "and the

2   petitioner be released on parole" to the last sentence of the order.

3          The clerk is to give fax and mail notice to all parties.

4

5

6   Date: __7/27/06__

7                                                    DAVID S. WESLEY

8                                                    Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF SERVICE BY MAIL

Case Name: In re Brandee Tripp, Case No. H029507

I declare that on _September 28, 2006_ I served the attached:

## PETITIONER'S DENIAL

on the parties listed below by enclosing same in an envelope to which adequate first class postage was affixed, and depositing same in the box for United States Mail at Walnut, California.

Attorney General
455 Golden Gate Avenue
San Francisco, CA 94102

Superior Court
Monterey County
1200 Aguajito Road
Monterey County, CA 93940

I declare, under penalty of perjury, that the facts I have stated above are true and correct.

Dated _September 28, 2006_, at Walnut, California.

_Joseph Sixta_
Declarant