**EXHIBIT 10**



ADRIAN T. WOODWARD, Esq.
Law Offices of Adrian T. Woodward
State Bar # 184011
4000 Long Beach Boulevard
Long Beach, CA 90807
Telephone: (562) 424-4880

Counsel for Petitioner
BRANDEE TRIPP

CALIFORNIA COURT OF APPEAL

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re<br><br>BRANDEE TRIPP,<br><br>    Petitioner,<br><br>For Writ of Habeas Corpus. | Case No. **H029507**<br><br>**PETITIONER'S NOTICE OF NEWLY PUBLISHED RELEVANT CASE** |

To THE HONORABLE CONRAD L. RUSHING, Presiding Justice, and THE HONORABLE Associate Justices of the Court of Appeal:

Counsel for petitioner Brandee Tripp respectfully draws the Court's attention to a case authority published several days ago that is relevant to and substantially adjudicates her constitutional claims:

*Irons v. Carey* (9th Cir., March 6, 2007) __F.3d__, 2007 WL 656345 ("*Irons*").

### Relevance

*Irons* is the Ninth Circuit's third in a trilogy that includes *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910 ("*Biggs*"), and *Sass v. California Board of Prison Terms* (9th Cir. 2006) 461 F.3d 1123 ("*Sass*"), cited and discussed in previous briefing and at oral argument in the instant case.

In *Biggs, Sass, and Irons*, the Ninth Circuit adjudicated one of petitioner's pivotal claims: whether, consistent with due process, the unchanging facts of commitment offenses may be employed repeatedly or interminably to preclude the parole of one like petitioner who indisputably satisfies all parole requirements and is forensically evaluated to pose a low parole risk.

In *Irons* the Ninth Circuit held that the BPH panel's use of Irons' crime, a *particularly egregious* murder, at Irons' *fourth* parole hearing, and *before he had served the minimum prison term imposed by the trial court*, satisfied the "some evidence" test sufficiently to uphold the BPH panel's decision finding that Irons was unsuitable for parole.

The Ninth Circuit first focused on Irons' egregious murder; he fired 12 rounds into the victim, then when he found the victim was still alive, stabbed him twice. After leaving the corpse in a sleeping bag for 10 days, Irons removed and weighted it, and dropped it in the ocean. Irons received a sentence of 17 years-to-life. In contrast, petitioner Tripp, serving a sentence of 15 years-to-life, neither killed, attempted to kill, nor intended to kill anyone; she was convicted based on her vicarious culpability for participating in a kidnapping.

The Ninth Circuit then emphasized that Irons, like Sass and Biggs before him, had not served his minimum term, i.e., "the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board." In discussing *Biggs, Sass*, and *Irons*, the Court carefully noted that while each decision must rest on its own facts, neither Biggs, Sass, nor Irons had served their aforementioned "minimum" terms when the Board denied parole.

In *Irons* the Court explained why *Biggs* is still good law and was not overturned by *Sass*, and re-emphasized that *continued use of commitment offense facts to find such an inmate unsuitable for parole may constitute a due process violation <u>after the minimum term has been served</u>*:

> In *Biggs*, we affirmed the district court's denial of a prisoner's petition for habeas corpus challenging the Board's determination that he was unsuitable for parole on the basis of his commitment offense. []Although we held that the Board's decision was supported by "some evidence" because "[t]he murder of which Biggs was convicted involved killing a witness in a manner which exhibited callous disregard for life," we made clear that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.
>
> . . . Specifically, we held that a parole board's sole ... reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole. []
>
> Subsequently, in *Sass,* we held that denying parole to an individual in reliance on his offense of commitment did not violate due process. [] Although we acknowledged that *Biggs* represents the law of this circuit and specifically noted that "continued reliance ... [on] the offense and on conduct prior to imprisonment ... could result in a due process violation,' " *id.,* we nonetheless held that the Board's reliance on the "gravity" of the second degree murder of which Sass was convicted, in combination with prior incidents of unlawful conduct, provided a sufficient basis for the Board to deem Sass unsuitable for parole.

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in *Sass* precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.
***We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.*** Specifically, ***in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board.*** [] All we held in those cases and all we hold today, therefore, is that, ***given the particular circumstances of the offenses in these cases***, due process was not violated when these prisoners were deemed unsuitable for parole ***prior to the expiration of their minimum terms***.

Furthermore, we note that in *Sass* and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. ***We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.*** *Biggs*, 334 F.3d at 917.

(*Irons*,__F.3d __, 2007 WL 656345 at *5-6 (emphasis added)).

In the case at bench these facts are undisputed: At the time of petitioner's 2004 parole reversal at issue, following her *fourteenth* parole hearing, she had been imprisoned for more than *twenty-five years* (including jail time). Ms. Tripp became eligible to parole 17 years earlier and had served *more than a decade in excess* of her minimum term of fifteen years imposed by the sentencing court, *twelve years in excess of the maximum* prison term prescribed by the regulations for the facts of her offense, and *fourteen years* longer than her *actual* prison term and parole date set by two BPH granting panels. Although the only arguably viable ground for the Governor's staff's reversal of petitioner's parole grant for the second time in 2004 was the facts of her criminal conduct in the 25-year old commitment offense, by then she had been imprisoned *four years longer than the maximum* prison term prescribed for a *first* degree murder with those very facts.

Because the Ninth Circuit's decision in *Irons* is significant and relevant, depicting and prohibiting the precise due process violation argued by petitioner, she respectfully asks the Court to consider it.

Date: March 13, 2007

Respectfully submitted,

Adrian Woodward
Counsel for Petitioner
BRANDEE TRIPP

# DECLARATION OF SERVICE BY MAIL

Case: **In re Brandee Tripp, No. H029507**

I declare that I am a citizen of the United States. I am over the age of 18 and am not a party to the within title cause.

On _March 13, 2007_, I served the attached

**Petitioner's Notice of Newly Published Relevant Case**

on the parties listed below by enclosing same in an envelope to which adequate postage was affixed, and depositing same at the United States Post Office in Walnut, California for mailing.

Attorney General
455 Golden Gate Ave.
San Francisco, CA 94102

Monterey County Superior Court
240 Church Street
Salinas, CA 93901

I declare, under penalty of perjury, that the facts I have stated above are true and correct.

Dated _March 13_, 2007, at Walnut, California

_____
Declarant